ELLIS v. JOHN CROSSLEY & SONS, Limited.

(Circuit Court, S. D. New York. January 6, 1903.)

1. VENDOR AND PURCHASER—FAILURE OF TITLE—LIMITED WARRANTY UNDER LOUISIANA STATUTE.

Under Code La. art. 2505, which provides that a vendor of lands, even in case of stipulation of no warranty, is liable to a restitution of the price in case of the purchaser's eviction, "unless the buyer was aware, at the time of the sale, of the danger of eviction, and purchased at his peril and risk," as construed by the courts of the state, a purchaser of a large quantity of land, who has full knowledge of defects in the title to a portion of it, and accepts a deed to such portion with a restricted warranty, must be held to have "purchased at his peril and risk" as regards that portion, and cannot recover from the vendor for his eviction therefrom.

2. SAME—GROUNDS FOR RECOVERY.

A purchaser of land cannot recover the purchase money paid in an action at law against his vendor, on the theory of an eviction merely, when he subsequently secured the issuance of a patent for the land from the United States which inured to his benefit.

3. SAME.

The mere fact that a commissioner of the general land office had the word "Canceled" written across the record of a patent, 55 years after its issuance, does not constitute an eviction of the person holding title and possession under such patent, so as to entitle him to recover from his vendor for a failure of title.

At Law. Action to recover from a vendor for failure of title to land.

This is an action to recover $49,603 damages, by reason of the failure of title upon the sale of certain lands, located in the state of Louisiana, which were conveyed by the defendant to the plaintiff's testator, in April, 1888, with a full warranty as to a part of the said lands and with a limited warranty as to the remainder. The cause was tried at the October term, held in the city of New York, before the court, a jury trial having been waived by stipulation, duly filed. At the close of the testimony the defendant moved generally for a dismissal of the complaint and also for a separate dismissal as to each of the several parcels of land in controversy, on the ground that the plaintiff had failed to prove facts entitling her to recover.

I. R. Oeland, for plaintiff.
Wheeler H. Peckham and Richard De Gray, for defendant.

COXE, Circuit Judge. In April, 1888, the defendant sold to Littleberry A. Ellis, plaintiff's testator, three plantations, situated on the Mississippi river, in the state of Louisiana. The lands in litigation are a part of the so-called "Riverside Plantation." Of these lands 365.39 acres were conveyed with a full warranty and 2,391.18 with a limited warranty. The plaintiff insists that as to this land, amounting to 2,756.57 acres in all, the title has failed and that she has been evicted therefrom.

Regarding the sale of lands under the so-called restricted warranty no case has been established. The sections of the Louisiana Code involved in this controversy are as follows:

"Art. 2500. Eviction is the loss suffered by the buyer of the totality of the thing sold or of the part thereof occasioned by the right or claims of a third person."

"Art. 2503. Parties may, by particular agreement add to the obligations of warranty which results of right from the sale, or diminish its effects; they may even agree that the seller shall not be subject to any warranty."

"Art. 2505. Even in case of stipulation of no warranty, the seller in case of eviction is liable to a restitution of the price, unless the buyer was aware at the time of the sale of the danger of eviction and purchased at his peril and risk."

"Art. 2514. In case of eviction from a part of the thing, the sale is not canceled, the value of the part from which he is evicted, is to be reimbursed to the buyer according to its estimation, proportionately to the total price of the sale."

Article 2505 has been construed by the courts of Louisiana to mean that the vendor is not liable where the infirmities of the title were known to the vendee, for in such circumstances the latter takes the property at his own risk. "Article 2505 means the same as if it read 'unless the buyer was aware, at the time of the sale, of the danger of the eviction and therefore purchased at his peril and risk.'"

The evidence is undisputed that Mr. Ellis had full knowledge of the defects in the title of these unwarranted lands. Not only was he so informed by the defendant's agents, but conclusive evidence of his knowledge is found in the supplementary and explanatory agreement executed at the time of the sale. In this agreement the defendant promises to use its best endeavor to obtain from the government of the United States title to the portions of the Riverside plot in which the titles are defective. The agreement was signed by the defendant's agents and was delivered to Ellis. It seems entirely plain that he had the same knowledge of the defective title as was possessed by the defendant and that, purchasing with such knowledge, he took the lands at his own risk and peril. The entire purchase amounted to 11,000 acres and it is fair to presume that the price was fixed with a view to the possible eviction of Ellis from the lands in question. To permit him to recover the purchase price when he was perfectly willing to accept the defective title would be to permit him to secure a grossly unfair advantage never contemplated at the time the sale was made.

Regarding section 51, township 9 S., of range 2 E., containing 130.50 acres, there is ambiguity in the pleadings and obscurity in the proof as to whether it was conveyed to Ellis by the defendant. Assuming, however, that the pleadings and proofs are sufficient in this regard there is no evidence of eviction. The plaintiff insists that section 51 is identical with section 61, and there is testimony to support this contention, but plaintiff's title to section 61 has not failed and she has at all times enjoyed and is to-day enjoying, so far as anything appears to the contrary, the full rights of ownership and possession. Her title is and at the time of the commencement of the suit was unassailable. This title was obtained through John Minor, who made entry in 1822, and has descended to the plaintiff through various mesne conveyances. If Ellis had paid anything to perfect this title it is certainly equitable that he should be reimbursed and the plaintiff could probably recover the amount, but the complaint is not drawn upon this theory and there is no evidence that any expense was incurred. It is this patent to John Minor that the plaintiff relies on to support her theory of eviction. The patent was issued in 1893 on the application of Ellis and for his benefit, so that the evidence relied on to prove

a defective title proves just the reverse. It shows that Ellis was by law entitled to this patent; that he procured it and his representative now holds a perfect title. It would indeed be an anomaly in the law if a vendee could evict himself from the possession of land by securing for his own benefit the only outstanding title which could ever be asserted in hostility to his own. There can be no recovery as to section 51 (or 61) for the reasons stated.

As to lot 2, section 28, in township 9 S., of range 2 E., containing 112.75 acres, the proof of eviction is insufficient. The title of the defendant was derived from a patent to Romanta Tillottson, dated November 8, 1838, and recorded May 16, 1839, in book of conveyances for Ascension parish, Louisiana. In 1893 an acting commissioner of the general land office wrote the word "Canceled" across the record of this patent. This was 55 years after the patent had issued and 5 years after the sale to Ellis. It is thought that this action was without authority and void and insufficient evidence of eviction, and that any subsequent action on the part of the officials of the land office, based on such attempted cancellation, would be equally ineffectual. As to this land, therefore, there can be no recovery.

The last tract of warranted lands is described as "adjoining lands hereinbefore described at or near New river settlement measuring 9½ arpents front on New river more or less by 14 arpents in depth, being parallel lines bounded above by lands formerly of Ursin Hebert and Joseph Simeon Gauthreaux and below by lands formerly of Ursin Hebert designated as section 27, township 9 S., of range 2 E." The plaintiff has introduced for the purpose of showing a failure of title to this land a final homestead certificate to David Chatman for lot 3 of section 27, township No. 9 S., of range 2 E., containing 40.30 acres. Also a similar certificate to Mrs. Martha Williams for lots 5 and 6 of the same section for 80.52 acres. It is thought that these certificates are, under the law, sufficient evidence of eviction, and that the only question is whether the land referred to in the certificates is included in the land above described as conveyed under warranty by the defendant.

From the testimony and exhibits submitted it is exceedingly difficult to determine this question. The two homestead certificates relate to the N. W. ¼ of section 27, whereas the court understands that the unwarranted lands conveyed by the defendant are located in the S. E. ¼. There can be little doubt that the Williams and Chatman lots were a part of the Riverside plantation and that they were a part of the warranted land. The court is also inclined to the opinion that the allegations of the complaint have reference to this land. The proof of this is not as clear as it might be and it is difficult to understand why the plaintiff has left the question debatable when it was capable of being proved to a demonstration. The proof submitted, though unsatisfactory and incomplete, has satisfied the court that the foregoing propositions can be sustained. In other words, it is thought that were the question submitted to a jury they would be justified in finding that the Williams and Chatman homestead lands were conveyed to Ellis under warranty. The witness Brown describes this part of section 27 and locates it on the

map as a part of the Riverside plantation. If presumption be permissible the argument would be as follows: (1) The Riverside plantation was conveyed to Ellis by defendant. (2) Section 27 is a part of the Riverside plantation and was conveyed partly with and partly without warranty. (3) The land in question is not in that part of section 27 which was sold without warranty. (4) The complaint describes land in section 27 which is not in the unwarranted quarter. The conclusion derived from these premises is that the land to which the title has failed was warranted to the plaintiff by the defendant.

The court does not overlook the contention that the entire section 27, estimated by the land specifically described in the deed, was not conveyed to Ellis. It is also true that the allegation of the complaint above quoted is an inaccurate description of the lots certificated to Williams and Chatman. These lots are not within parallel lines. Certainly they are not within parallel straight lines and the acreage is different from the lands described in the complaint. The lots front on New river, however, at least for a short distance, and, taking the entire testimony into consideration, the court, while conscious that the proof might be much more satisfactory, is inclined to find that the certificates cover land warranted to Ellis. The damage for this breach of warranty is assessed at $1,300.

It follows that the plaintiff is entitled to judgment for $1,300 for the failure of title to the lands certificated to Williams and Chatman. As to all other causes of action and in all other respects the complaint is dismissed.